SCHIEFFELIN et al. *against* HARVEY.

In an action on the case by a freighter, against the owner of a general ship, for damages by embezzlement, it is not necessary that notice of such damage should have been given previous to the commencement of the action.

Plundering, by a custom-house officer, having charge of a vessel, is within the risks assumed by the owner, under a bill of lading.

Established principles of law cannot be controlled by custom.

THIS was an action on the case against the defendant, as owner of the ship Science.

The plaintiffs' declaration contained,

1st. A count alleging a loss by embezzlement.

2d. A count on the bills of lading; and,

3d. The common money counts.

Plea, the general issue, with notice of special matter.

It appeared in evidence that the Science was a general ship, owned by the defendant, and bound from the port of New York to the port of London. The plaintiffs shipped on board of her, two boxes of nutmegs, to be delivered to certain consignees at London. The bill of lading, signed by the captain, specified the two boxes of nutmegs, without mentioning their weight, and contained the usual memorandum, "contents unknown." The two boxes were weighed by the weighmaster, on the wharf, at the port of New York, previous to their being put on board, and weighed 4 cwt., and were in good condition. These articles, how-

Schieffelin v. Harvey

ever, being inadmissible articles, could not be landed in the port of London, according to the intention of the shippers, and the captain was compelled to bring them back again to New York. As soon as the vessel arrived at Gravesend, on her way to London, two custom-house officers were placed on board, to prevent the landing of inadmissible articles, and these officers remained on board until the vessel's departure from London on her homeward voyage, and during all that time, had free access to the nutmegs, which were so stowed on the outward voyage as to be altogether inaccessible to the crew. It was admitted that the revenue officers, in the port of London, are notorious for plundering the property under their care.

On the day the Science departed from London, on her homeward voyage, the captain and consignees signed an agreement, indorsed on the original bill of lading, to return the articles mentioned in the bill of lading, at an increased freight, to the shippers at "their own risk." The nutmegs were inaccessible to the crew, on the homeward voyage, and were found to weigh but 3 cwt. when delivered at the port of New York. They were brought to the shippers by a cartman, employed by the ship, and, upon examining the boxes, the hoops appeared to have been taken off.

The counsel, for the defendant, then offered testimony to show, that as soon as a custom-house officer is put on board, as in this case, the goods are at the risk of the shipper, according to the general understanding of merchants.

THOMPSON, J. The testimony is inadmissible. The established principles of law cannot be controlled by custom.

It was then urged, for the defendant: 1. That it was not sufficiently shown, that notice of the deficiency had been

given to the defendant, previous to the discharge of the crew. That the ship-owner is entitled to such notice, to enable him to compel the crew to make good the deficiency, from their wages. To show that the crew were bound to contribute, he cited Abbott, 374, 375; 2 Show. 167; Lord Raym. 650; 4 Bos. & Pull. 347; 3 Johns. Rep. 17; 1 Peters, 239, 243, and he contended, that the doctrine of notice was a necessary result, from the liability of the crew.

2. That from the testimony, however, it was apparent that the deficiency must have arisen from the acts of the custom-house officers, and that the ship-owner was not liable for the conduct of men over whom he had no control.

The counsel, for the plaintiffs, said it was absurd to contend that notice ought to be given before the crew were discharged, because, in almost every instance, a deficiency could not be ascertained at that time. Ship-owners are considered as common carriers, and, consequently, liable for all losses, except such as arise from the act of God, public enemies, or the perils of the seas. Abbott, 159; Marsh, 157.

In this case, the bills of lading are conclusive. On the homeward voyage, the captain binds himself, by the indorsement, to deliver the articles mentioned in the bills of lading, at the risk of the "plaintiffs." This expression implies the same risks mentioned in the outward bill, viz: the actual perils of the seas; the owner is, therefore, liable for all losses proceeding from other causes.

THOMPSON, J. The notice contended for by the defendant is unnecessary.

The bill of lading is certainly conclusive. The risks, mentioned in the indorsement, must be considered as refer-

Schieffelin v. Harvey.

ring to those mentioned in the bill, and extend to the actual perils of the seas only. The deficiency in this case, has, in all probability, proceeded from the acts of the revenue officers; and, for those acts, I am of opinion, that the owners are, in this case, liable.(1)

*Colden*, for the plaintiffs.

*P. W. Radcliff*, for the defendant.

Verdict for the plaintiffs.

(1) This cause was argued at bar, in August term, 1810, on a case made, (6 Johns. 171,) and the verdict of the jury was confirmed. The defendant, in his argument, relied on two grounds:

1st. That the nutmegs being prohibited articles at the port of destination, and on that account, not allowed to be landed; this was the fault of the plaintiff, and that, from the time of the arrival and refusal to permit them to be landed, the defendant ceased to be a common carrier, and became a mere bailee for hire, and answerable only for his fault or negligence, and not for the acts of the custom-house officers.

2d. That a common carrier may make a special acceptance, and will in such case be answerable only according to that acceptance; that here was an express agreement by which the terms of the original contract were varied, and the goods put at the risk of the plaintiff.

The court, however, decided that the indorsement, on the bill of lading, was a complete contract for conveying the goods, in question, from London to New York, for a stipulated compensation; and that, from the time it was entered into, the goods were in the master's charge as a common carrier, and that he was, therefore, liable as a common carrier.

Upon the second point, the court decided, that although the general operation of the law may be controlled by the agreement of the parties, such agreement, to have such an effect, ought to be clear and capable of but one construction; that the words "at their own risk" in the indorsement never could have been designed to throw a loss by embezzlement on the shipper. That, in their judgment, it was only a cautionary measure on the part of the consignees to save themselves from all responsibility for having re-shipped the

goods, before they had an opportunity of consulting their principal, without having them insured.

Two of the points raised at *Nisi Prius*, were not urged by the defendant's counsel at bar; viz: the admissibility of testimony to show the understanding of merchants, as to the liability of the defendant, for the acts of the custom-house officer; and second, the necessity of notice of the embezzlement, previous to the discharge of the cargo.

As to the first point, the testimony offered, was merely the *opinion of* merchants as to the liability of the master. As this liability is fixed by the common law, the mere usage or opinion of merchants could never control it. It is now well settled that the usage of no class of men can be sustained in opposition to the established principles of law. Vide, 10 Mass. 20; 3 Watts. 179; 1 Watts. 363; 2 Johns. 335; 1 Hall, 602, 619; 2 Wash. C. C. 724, &c. There undoubtedly are cases in which mercantile usage is admissible to fix the true interpretation of a contract, but upon this subject, the rule is expressly laid down in *Smith* and *Stanley* v. *Wright* et al., (1 Caines, 45,) where it is thus stated by the court: "The true test of a commercial usage, is its having existed a sufficient length of time to have become generally known, and to warrant a presumption that contracts are made in reference to it." Vide *Dickenson* v. *Litwall*, 4 Camp. 279, and see also, *Yeats* v. *Pain*, 1 Holt's N. P. Reports, 95, and the note to that case, where this subject is fully considered.

The second point is sufficiently answered by the established rule of law, as to the time of payment of sailors' wages. It has been frequently decided, that the master is not bound to pay them until the cargo is discharged: (1 Pet. 255:) for two reasons: first, because the freight, which is the fund out of which wages are to be paid, is not received by him until then. And second, that he may have a sufficient opportunity to ascertain whether any embezzlement of the cargo has taken place, so that he may deduct the amount from their wages.